GUILLERMO GONZÁLEZ HERNÁNDEZ, demandante y recurrido, *v.* MARÍA J. BORGOS TABOAS, demandada y recurrente.

*Número:* R-65-247 *Resuelto:* 22 de noviembre de 1967

*A. J. Amadeo Murga,* abogado de María J. Borgos Taboas; *Garrard Harris,* abogado de Guillermo González Hernández.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

A pesar de que libramos en este caso un auto de revisión, hemos decidido considerarlo como un recurso de *cer-*

*tiorari* por tratarse de la validez de un pronunciamiento del Tribunal de instancia en un incidente sobre concesión de honorarios de abogados por servicios rendidos para hacer efectiva la pensión alimenticia concedida por la sentencia final dictada en el caso.

De los autos resulta que la Sala de San Juan del Tribunal Superior dictó sentencia el 10 de febrero de 1960 disolviendo el vínculo matrimonial existente entre Guillermo González Hernández y María Joaquina Borgos Taboas por la causa de separación. A dicha sentencia se incorporó una estipulación de las partes en virtud de la cual se obligaba el demandante a pagar a la demandada la suma de $600 mensuales en calidad de pensión alimenticia para los tres hijos habidos en el matrimonio.

A partir de diciembre de 1960 el demandante formuló varias peticiones para que dicha pensión alimenticia fuese rebajada a $375 y después a $200 mensuales. A esas gestiones se opuso la demandada solicitando a la vez el aumento de la pensión. Desde fines de 1962 dejó el demandante de pagar la totalidad de la pensión y para el 31 de marzo de 1963 los atrasos montaban a $3,825 y en noviembre de ese año a $6,625. Se promovieron varios incidentes de desacato motivados por el no pago de las pensiones y un pleito en cobro de las mismas.

Para el 13 de junio de 1963 el demandante Guillermo González Hernández radicó ante la Corte de Quiebras una petición bajo el Capítulo XII de la Ley Federal de Quiebras proponiendo un plan de pago para sus acreedores por el cual, por un período de no menos de 10 años y posiblemente por 20 años, se pondría al Juez de Quiebras en posesión y administración de todas las propiedades de González Hernández con excepción de sus efectos personales, confiriendo amplias facultades de poder al síndico de quiebra para vender, administrar, arrendar y gravar esas propiedades y sus rentas; del ingreso de todo ello pagar al acreedor principal, Luce &

Co., la suma de $21,000 anuales para satisfacer el principal e intereses de su crédito de $241,606.54; se pagaría también $6,500 anuales por contribuciones de ingresos y territoriales y una suma de $6,000 anuales a Guillermo González Hernández para sus gastos personales. Nada se proveía en dicho plan para el sostenimiento de los hijos, ni se confería poder a funcionario alguno para atender al pago de la pensión alimenticia anual concedida por la sentencia del 10 de febrero de 1960.

El Juez de Quiebras determinó: (1) que todos los acreedores afectados por el plan lo habían aceptado, (2) que todos los depósitos por las reclamaciones privilegiadas, por servicios y costas habían sido hechos, y (3) que el arreglo se había hecho equitativamente y de buena fe y no para realizar o procurar que se realizaran actos legalmente prohibidos. Confirmó dicho plan de arreglo.

En ese procedimiento compareció la demandada María Joaquina Borgos Taboas representada por su letrado A. J. Amadeo Murga y solicitó y obtuvo del Juez de la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico que se dejara sin efecto la orden del Juez de Quiebras confirmando dicho plan de arreglo y otra orden que había dictado dicho funcionario para que se paralizara todo procedimiento ante los tribunales locales instado por la señora demandada para cobrar las pensiones alimenticias adeudadas. Del fallo de ese tribunal federal apeló González Hernández para ante la Corte de Apelaciones de los Estados Unidos para el Primer Circuito. En ese recurso también estuvo ella representada por el mismo letrado. El 13 de abril de 1965 se confirmaron las resoluciones apeladas. En su decisión, entre otras cosas, dijo el Tribunal de Apelación:

"Sanas razones de orden público exigen el pleno reconocimiento de la obligación del quebrado de continuar cumpliendo su obligación legal de sostener a sus hijos dependientes. Consecuentemente, un procedimiento al amparo del Capítulo XII no

puede ser usado como un vehículo para poner los bienes del deudor fuera del alcance de sus hijos dependientes. Por el contrario, la Corte de Distrito, debía determinar si el deudor, de buena conciencia, había provisto para el cumplimiento de esa obligación en el plan de arreglo propuesto. Si el arreglo es tal que claramente inhabilita al deudor para cumplir con sus obligaciones a ese respecto, actualmente o en el futuro, difícilmente puede considerarse como propuesto de buena fe y ciertamente no podía ser considerado como hecho en el mejor interés de esta clase de acreedores. Esto no quiere decir que un arreglo deba contener medidas específicas para cumplir la obligación legal para el sostenimiento de sus hijos dependientes. Pero significa que la corte debe considerar si el arreglo es tal que habilite al deudor con cumplir sus obligaciones corrientes y futuras a ese respecto o si, por el contrario, indebida o innecesariamente lo incapacita para cumplirlas." Véase *González Hernández* v. *Borgos,* 343 F.2d 802, 805.

El 4 de mayo de 1965 la demandada presentó una moción en la acción de divorcio solicitando que se ordenara al demandante el pago de $8,000 por dichos servicios profesionales. Se opuso éste a tal solicitud "por no corresponder al Hon. Tribunal General de Justicia de Puerto Rico tal determinación y sí corresponde a la corte federal." Posteriormente la demandada informó al Tribunal Superior que desistía temporalmente de su moción en vista de tal oposición y para pedir a la corte federal de primera instancia que fijara tales honorarios y ordenara su pago, y que si ésta no lo ordenaba volvería nuevamente allí a pedirlos. A esto nada proveyó el Tribunal Superior.

Acudió la demandada ante la Corte de Quiebras para que se concedieran esos honorarios. En 20 de octubre de 1965 su Juez denegó la concesión de ellos fundado en que la Ley Federal de Quiebras, Secs. 491 y 492, no le daba facultad alguna para conceder y ordenar el pago de tales servicios y sí únicamente *"for proper costs and expenses in connection with the administration of an estate in a proceeding under this chap-*

*ter or in connection with an arrangement confirmed by the court . . . ."*

Así las cosas, el 29 de octubre de 1965 la Sala de San Juan del Tribunal Superior, en la acción de divorcio, emitió ciertos "Pronunciamientos Complementarios A la Sentencia", entre ellos, el siguiente:

"A la moción solicitando fijación de honorarios por razón de la labor profesional realizada por el abogado de la demandada en la Corte de Distrito de Estados Unidos para Puerto Rico, y ante la Corte de Circuito del Primer Circuito en el caso B-29-63, procedimiento de arrangement instado por el aquí demandante bajo las disposiciones de la Ley de Quiebras, NO HA LUGAR. Aun si consideráramos la labor de impugnación del plan de arreglo sometido por el aquí demandante en aquel procedimiento como parte de la defensa de los intereses de la demandada en su acción de reclamación de alimentos, como alega dicha demandada en el apartado tres (3) de su moción, no nos corresponde justipreciar el valor de esos servicios ni ordenar su pago. Tales determinaciones corresponden al Tribunal Federal."

La peticionaria en este recurso ha impugnado el anterior pronunciamiento y sostiene, principalmente, que el tribunal de instancia erró al resolver que no le correspondía justipreciar el valor de esos servicios ni ordenar su pago y que era al tribunal federal el que debía justipreciarlos y ordenar su pago.

■ A nuestro juicio tiene razón la peticionaria. Tratándose del cobro de honorarios por servicios prestados en defensa de la efectividad de una pensión alimenticia concedida en favor de unos menores por un tribunal local, corresponde a éste justipreciarlos y ordenar su pago.

■ No todos los asuntos relativos a la propiedad de un quebrado son de la jurisdicción exclusiva de la Corte de Quiebras. Esta jurisdicción es exclusiva solamente dentro del campo de los procedimientos de la Ley de Quiebras y hasta donde el estatuto lo indica.

 Cuando un acreedor pretende demostrar que su crédito es uno de los denominados "nondischargeable" bajo la Ley de Quiebras, la Corte de Quiebras no asume jurisdicción sino que ésta es ejercitada por el tribunal estatal y el hecho de que un deudor haya sido declarado en quiebra no impide que el acreedor reclame su derecho en una corte estatal si alega que su reclamación cae dentro de las excepciones a la Ley. Una declaración de quiebra no es *res judicata* entre el acreedor y el quebrado si el crédito del primero es uno de los que están excepcionados por la Ley, bien por no ser "provable" o por no ser "dischargeable". Esa reclamación tampoco constituye un ataque colateral a la declaración de quiebra si el crédito es "non provable" y "nondischargeable". Véase 9 Am. Jur.2d *Bankruptcy* §§ 744 y 746.

 Bajo la Ley de Quiebras los alimentos para los hijos y la esposa se consideran "nondischargeable debts", ya que no están basados en un contrato, sino en el deber natural y legal del esposo y padre de mantener a su esposa e hijos, estando siempre sujetos a ser modificados por la corte dependiendo de las circunstancias de las partes. Por lo tanto un quebrado no queda librado de esta obligación al ser declarado tal (*González Hernández* v. *Borgos*, 343 F.2d 802 (1965); Keezer, *Marriage and Divorce*, Sec. 579, pág. 640; 9 Am. Jur.2d § 793, pág. 596; 74 A.L.R.2d 758, *Obligation under property settlement agreement between spouses as dischargeable in bankruptcy*).

 Los honorarios de abogado otorgados a una demandante dentro de un pleito de divorcio se consideran que participan de la misma naturaleza de los alimentos y por lo tanto son también "nondischargeable" dentro de un procedimiento de quiebra. 8 Remington, *Bankruptcy Law*, Sec. 3340 (6th Ed. 1955); *Allison* v. *Allison*, 372 P.2d 946 (1962); *Damon* v. *Damon*, 283 F.2d 571 (1960); *In Re Brennen*, 39 F.Supp. 1022 (1941).

■ Esos honorarios forman parte de los alimentos de los menores, no importa el foro donde se presten los servicios. Véanse: *Valdés* v. *Tribunal de Distrito*, 67 D.P.R. 310, 312 (1947); *Pérez* v. *Tribunal de Distrito*, 69 D.P.R. 4, 20 (1948); *Vargas* v. *Jusino*, 71 D.P.R. 389, 395 (1950); *Conesa* v. *Corte*, 72 D.P.R. 68, 72 (1951); *García* v. *Acevedo*, 78 D.P.R. 611, 617 (1955).

■ Como regla general en los procedimientos de quiebra no se pueden conceder honorarios de abogados a menos que el estatuto lo autorice expresamente. (9 Am. Jur.2d *Bankruptcy* § 1635, pág. 1145.) La Ley de Quiebras no dispone expresamente para el pago de honorarios de abogados de "non petitioning creditors", y por lo tanto la Corte de Quiebras no puede imponerlos basándose solamente en sus poderes inherentes en equidad. (9 Am. Jur.2d § 1637, pág. 1148.)

En este caso la Sra. Borgos es un "non petitioning creditor" y por lo tanto la Corte de Quiebras no podía darle honorarios de abogados aun cuando la Corte de Apelaciones declaró que el Sr. González no había procedido de buena fe al declararse en quiebra y de esa manera pretender negarle alimentos a sus hijos. Pero esto no quiere decir que la Sra. Borgos no podía reclamar estos honorarios dentro del pleito de divorcio tramitado en las cortes locales que estaba abierto sobre lo relacionado con la cuestión alimenticia.

Esta clase de honorarios son considerados de distinta forma que los que estaban envueltos en el caso de *Brown* v. *Gerdes*, 321 U.S. 178 (1944), invocado por el recurrido.

Los servicios profesionales rendidos por el letrado Amadeo Murga a la señora madre de los tres hijos de Guillermo González Hernández, ante las cortes federales, durante unos dos años, tuvieron como único objetivo la protección, efectividad y realización de la pensión alimenticia estipulada por el propio padre demandante e incorporada en la sentencia del Tribunal Superior. No dudamos que la obligación de

pagar tales servicios, es un corolario obligado de la obligación principal de proveer al alimentista.

En una orden del Juez de Quiebras este funcionario se manifestó así respecto a la calidad de esos servicios profesionales: ". . . there is no question that the petitioner's attorney performed excellent services for his client in opposing confirmation . . . ."

*Por todo lo expuesto se anulará y revocará el pronunciamiento recurrido e impugnado en este recurso y se devolverán los autos originales al tribunal de instancia para que éste proceda, previa audiencia a tal efecto, a justipreciar y ordenar el pago de dichos servicios profesionales.*

El Juez Asociado Señor Ramírez Bages disintió.

—O—

Opinión disidente del Juez Asociado Señor Ramírez Bages

San Juan, Puerto Rico, a 22 de noviembre de 1967

Disiento. Los servicios profesionales prestados a la recurrente que son motivo de esta resolución se prestaron en los tribunales federales dentro de un procedimiento establecido por la Ley de Quiebra. En los procedimientos dirigidos a impugnar el primer plan de pagos, el tribunal de instancia concedió las costas a la recurrente mas no concedió honorarios de abogado. Luego el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico confirmó la denegación de toda concesión de honorarios por los servicios de abogado prestados a la recurrente durante sus gestiones en los tribunales federales en apoyo del pago de la pensión alimenticia que le fuera concedida en la causa de divorcio seguida en el tribunal de instancia. Tal dictamen, aunque sujeto a revisión no puede ser atacado colateralmente. *Chicot County Dist.* v. *Bank*, 308 U.S. 371 (1940). En *Brown* v. *Gerdes*, 321 U.S. 178 (1944), se dictaminó que la Corte de Quiebra tiene jurisdicción exclusiva para fijar la cantidad

que deberá concederse por servicios de abogado prestados previa autorización de dicha corte para representar a la empresa querellada en litigios en los tribunales estatales con el fin de cobrar ciertas reclamaciones que aquélla tenía en contra de sus anteriores funcionarios y directores. Con mayor razón debemos concluir que dicha jurisdicción es exclusiva en relación con la concesión de honorarios por servicios de abogado prestados dentro de un procedimiento establecido por la Ley de Quiebra en el tribunal federal en cuestión.

Los casos citados en la opinión de mayoría no sostienen su conclusión. En *Allison* v. *Allison*, 372 P.2d 946 (Col. 1962) ; *Damon* v. *Damon*, 283 F.2d 571 (1st Cir. 1960) ; e *In Re Brennen*, 39 F.Supp. 1022 (D.C.N.Y. 1941), se trataba, contrario al caso que nos ocupa, de honorarios de abogado concedidos a la demandante en una acción de divorcio por el tribunal estatal que entendió en dicha acción y que concedió el divorcio. Radicada la demanda por estos honorarios contra el marido, adujo éste en *Allison*, supra, la defensa de que había sido declarado en quiebra. El tribunal concluyó en este caso que como los honorarios de abogado en cuestión se conceden para beneficio de la mujer, están sobre la misma base que los alimentos u otra forma de mantenimiento y como el quebrado no puede ser relevado de una sentencia por alimentos de igual manera tampoco puede ser relevado en la quiebra de una orden para el pago de los honorarios de abogado de la mujer. En *Damon* se dijo que la condena de pago de honorarios de abogado contra un quebrado en una acción de divorcio es como una sentencia por alimentos y por lo tanto el quebrado no puede ser relevado de la misma. De manera que en este caso se dijo que no procedía un hábeas corpus bajo la Ley de Quiebra para librar al quebrado de la prisión a que fue recluido en ejecución de la sentencia por los honorarios de abogado. El caso de *Brennen* sostiene el mismo principio.

En los casos precedentes se trataba de honorarios de abogado concedidos por el tribunal que oyó el divorcio por servicios prestados en esa acción y la cuestión era si la declaración de quiebra del marido lo relevaba de esa sentencia y se dijo que no. Pero, en el caso que nos ocupa se reclamaron honorarios de abogado en la corte federal por servicios allí prestados en un procedimiento de quiebra para salvaguardar los derechos de alimentos concedidos a la esposa en su acción de divorcio en el Tribunal Superior estatal. Como el tribunal federal dispuso que bajo la Ley de Quiebra no se podrían conceder honorarios de abogado por tales servicios, se recurrió entonces al tribunal estatal para que los concediese y éste se negó con razón, a mi juicio, ya que no procedía que el tribunal estatal concediese honorarios de abogado por servicios prestados en el tribunal federal, luego de haberlos negado éste.

Los casos de *Valdés* v. *Tribunal de Distrito*, 67 D.P.R. 310, 312 (1947); *Vargas* v. *Jusino*, 71 D.P.R. 389, 395 (1950); *Conesa* v. *Corte*, 72 D.P.R. 68, 72 (1951); y *García* v. *Acevedo*, 78 D.P.R. 611, 617 (1955), sostienen la doctrina bien establecida en esta jurisdicción de que en pleitos de alimentos, los honorarios de abogado son parte de los alimentos a que tienen derecho los menores bajo el Art. 142 del Código Civil (31 L.P.R.A. sec. 561), aunque el demandado no sea temerario. En *Pérez* v. *Tribunal de Distrito*, 69 D.P.R. 4, 20 (1948), confirmamos la sentencia del juez de turno de este Tribunal determinando que del haber de la sociedad de gananciales procede conceder a la divorciada un anticipo para sufragar sus necesidades y para el pago de honorarios de abogado mientras se sustancia el pleito principal sobre la liquidación de gananciales.

Pero en ninguno de los anteriores casos hemos ido tan lejos como conceder honorarios por servicios de abogado prestados en un procedimiento de quiebra en el foro federal,

máxime cuando ese foro los niega o por tales servicios en cualquier otro foro.