Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| LESLIE A. ARTACHE DELGADO<br><br>Peticionario<br><br>v.<br><br>ALEXANDER D. SALCEDO SAN INOCENCIO<br><br>Recurrido | TA2025CE00493 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Civil Núm. NSFR201600722<br><br>Sobre: Alimentos |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 17 de diciembre de 2025.

Comparece ante nos la Sra. Leslie A. Artache Delgado (en adelante, "señora Artache Delgado" o "Peticionaria") mediante petición de *certiorari.* Nos solicita que revoquemos la *Orden* emitida el 6 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante, "TPI" o "tribunal de instancia").[1] En esta, se ordenó la paralización de los procedimientos sobre alimentos debido a que el Sr. Alexander D. Salcedo San Inocencio (en adelante, "señor Salcedo San Inocencio" o "Recurrido") está bajo la protección de la Ley de Quiebra Federal.

Examinado el expediente, resolvemos **expedir** el auto de *certiorari* solicitado y **revocar** el dictamen recurrido.

-I-

Según surge del expediente,[2] la señora **Artache Delgado** y el señor **Salcedo San Inocencio** son los progenitores del menor

---

[1] Notificada el 7 de agosto de 2025.

[2] Debemos señalar que examinamos y tomamos conocimiento de los autos originales e incluso, hacemos referencia a varias instancias del expediente del TPI dado que las partes no sometieron dichos documentos a nuestra consideración.

G.A.S.A. Allá para el **22 de octubre de 2018**, se emitió un *Informe Examinador de Pensiones Alimentarias* (en adelante, "Informe").[3] En este, el Examinador de Pensiones Alimentarias recomendó se fijará al **Recurrido** el pago mensual de $335.00 mensuales por concepto de pensión alimentaria a beneficio del menor G.A.S.A. De igual forma, el Examinador de Pensión Alimentarias sugirió que, además de la pensión alimentaria, el padre alimentante tendría que proveer mensualmente al menor alimentista una caja de *PediaSure* con fibra. Finalmente, el **30 de octubre de 2018**, el TPI aprobó el **Informe**.[4]

Varios años más tarde, la señora **Artache Delgado** acudió al TPI en varias instancias debido al incumplimiento de pago de la pensión alimentaria y la entrega mensual de una caja de *PediaSure* con fibra, según fijado en el **Informe**.

Ante ese cuadro y tras la incomparecencia del señor **Salcedo San Inocencio** a una Vista de Desacato; el TPI citó una Vista de Seguimiento para el **8 de mayo de 2024**.[5]

No obstante, el **7 de mayo de 2024**, el señor **Salcedo San Inocencio** presentó una *Moción urgente sobre radicación de quiebra, paralización de procedimiento de cobro de deuda de pensión y suspensión*.[6] En esencia, informó que presentó una petición de quiebra bajo el Capítulo 13 del Código de Quiebras Federal. Señaló que la deuda sobre pensión alimentaria estaba incluida en la quiebra por lo que, el "*automatic stay*" o paralización automática conforme a la legislación federal impedía su cobro. Por ello, el **Recurrido** solicitó la suspensión de la vista señalada para el 8 de mayo de 2024 de manera presencial.

---

[3] Anejo de la Entrada Núm. 3 del caso TA2025CE00493, intitulado *Ap[é]ndice 4 Informe Examinador del 22 de octubre de 2018*.
[4] Véase, *Autos Originales*, págs. 281-285.
[5] Véase, *Autos Originales*, pág. 415.
[6] Véase, *Autos Originales*, págs. 453-457.

El **8 de mayo de 2024**, el TPI emitió una *Orden* en la cual declaró No Ha Lugar la solicitud del señor **Salcedo San Inocencio** y mantuvo el señalamiento para la vista.[7] En esa misma fecha, el TPI celebró la vista a la cual no compareció el **Recurrido**, pero sí su representante legal. En dicha vista, se constató que el impago de la obligación alimentaria sobrepasaba los $4,000.00.[8]

Así las cosas, el TPI señaló una Vista de Seguimiento híbrida para el **3 de julio de 2024**, a la cual el señor **Salcedo San Inocencio** debía comparecer de manera presencial, mientras que las demás partes comparecerían mediante videoconferencia.

Llegado el **3 de julio de 2024**, el **Recurrido** no compareció a la Vista de Seguimiento. De manera que, el TPI pospuso la Vista de Seguimiento para el **14 de agosto de 2024** de forma híbrida.[9] Por razones ajenas a la voluntad de las partes y del propio tribunal, la Vista de Seguimiento se pospuso y se celebró el **25 de septiembre de 2024**. En lo pertinente al caso de autos, se le ordenó al señor **Salcedo San Inocencio** a proveer la caja de *PediaSure* mensualmente, a no ser que la señora **Artache Delgado** indicara lo contrario. Por lo tanto, se señaló una Vista de Seguimiento para el 7 de octubre de 2024.

El **7 de octubre de 2024**, las partes comparecieron de manera híbrida a la Vista pautada para ese día. En esencia, la **Peticionaria** indicó que desconocía si la petición de quiebra presentada por el **Recurrido** había sido aceptada.[10] Por esa razón, el TPI le concedió al señor **Salcedo San Inocencio** un término de cinco (5) días para someter mediante moción copia del documento de la Ley de Quiebra en el que constara la aprobación de su petición.

---

[7] Véase, *Autos Originales*, págs. 462-463.
[8] Véase, *Autos Originales*, págs. 464-465.
[9] Véase, *Autos Originales*, págs. 475-476.
[10] Véase, *Autos Originales*, págs. 517-518.

A ese efecto, se emitió una *Orden* el 5 de diciembre de 2024, notificada el 11 de diciembre de 2024, reiterando la orden impartida.

Tras varios meses de incumplimiento y apercibimientos sobre sanciones económicas, el **2 de abril de 2025**, el TPI emitió una *Orden* en la cual le impuso al señor **Salcedo San Inocencio** una sanción económica ascendente a $2,000.00 a ser pagados en un término de treinta (30) días, so pena de desacato.[11]

El **3 de julio de 2025**, el señor **Salcedo San Inocencio** presentó una *Moción solicitando relevo de resolución por nulidad (regla 49.2) y cumplimiento de orden*.[12] En esencia, informó que desde el 7 de mayo de 2024 presentó mediante moción evidencia de la radicación de quiebra y la orden de paralización automática. Alegó que, desde entonces, ha pagado la pensión de manera ininterrumpida y la misma esta al día, **excepto** por la suma de $4,800.00 **incluida en la petición de quiebra**.[13] En cuanto a la deuda antes dicha, el **Recurrido** alegó que la señora **Artache Delgado** ejerció presión indebida, ya que la Administración para el Sustento de Menores (en adelante, "ASUME") era la entidad que ostentaba la representación del menor alimentista y sus intereses en el procedimiento ante la Corte de Quiebras. También, adujo que la sanción económica impuesta por el TPI resultaba nula *ab initio,* ya que la sanción podía evidenciar un intento de cobrar de forma indirecta una deuda protegida por la quiebra. Por lo tanto, solicitó que se le relevara de la presentación de documentos y de la sanción económica. De igual forma, solicitó que se le ordenara a la **Peticionaria** abstenerse de realizar solicitudes al respecto y que le ordenase a la **ASUME** a informar al TPI de cualquier cambio en el proceso de quiebra.

---

[11] Véase, *Autos Originales*, págs.527-529.

[12] Anejo de la Entrada Núm. 3 del caso TA2025CE00493, intitulado *Moci[ó]n de la parte apelante el 3 de julio de 2025.*

[13] *Íd.* Junto a la moción antes dicha, el Recurrido anejo una Certificación de ASUME con la cantidad de $4,800.00 de deuda de pensión alimentaria.

El **8 de julio de 2025**, el TPI le ordenó a la **señora Artache Delgado** y a la **ASUME** a expresarse en torno a la solicitud del **Recurrido** en un término de diez (10) días.[14]

El **9 de julio de 2025**, la **ASUME** compareció mediante *Moción en cumplimiento de orden*.[15] En apretada síntesis, adujo que el 26 de abril de 2024, presentó una *Moción de desacato* por el incumplimiento del señor **Salcedo San Inocencio** con su obligación alimentaria para con el menor G.A.S.A.[16] No obstante, indicó que desistió del trámite solicitado, toda vez que la señora **Artache Delgado**, realizó la misma solicitud y que el TPI atendía la misma.[17] Cabe señalar que el 6 de mayo de 2024, el TPI declaró Ha Lugar la solicitud de la **ASUME** y dio por desistida la solicitud de desacato.[18] De manera que, la agencia desconocía el estatus de los procedimientos ante el TPI por no ser parte de los mismos y esto le impedía expresarse al respecto.

Ante este cuadro, el **15 de julio de 2025**, el TPI declaró Ha Lugar la solicitud de la **ASUME**.[19] Particularmente, el tribunal expresó *"[s]e toma conocimiento y se [reitera] la protección de la Ley de Quiebras a la parte demandada"*.

El **6 de agosto de 2025**, la señora **Artache Delgado** presentó una *Moción en cumplimiento de orden, informativa y en solicitud de orden*.[20] En esencia, arguyó que el señor **Salcedo San Inocencio** incumplió con el pago de la pensión alimentaria y su obligación de proveer mensualmente la caja de *PediaSure* con fibra, según se dispuso en el **Informe**. Tanto así, que a esa fecha el padre alimentante no había provisto las cajas de *PediaSure* de los meses

---

[14] Véase, *Autos Originales*, págs. 541-542.
[15] Véase, *Autos Originales*, págs. 543-544.
[16] Véase, *Autos Originales*, págs. 441-442.
[17] Véase, *Autos Originales*, pág. 444.
[18] Véase, *Autos Originales*, págs. 445-446.
[19] Anejo de la Entrada Núm. 3 del caso TA2025CE00493, intitulado *Ha lugar del TPI de la moción en el ap[é]ndice 5.*
[20] Véase, *Autos Originales*, págs. 547-548.

de **octubre**, **noviembre** y **diciembre de 2024**; al igual que el de los meses de **enero**, **febrero**, **marzo**, **abril**, **mayo**, **junio** y **julio de 2025**. Por ello, le solicitó al TPI que le ordenara al **Recurrido** la entrega inmediata de las cajas correspondiente a los meses adeudados.

El **7 de agosto de 2025**, el TPI declaró No Ha lugar la solicitud de la **Peticionaria**.[21] Resolvió que *"[s]e paraliza el caso [por] cuanto la parte demandante está bajo la protección de la Ley de Quiebra Federal"*.

Inconforme, el **20 de agosto de 2025**, la señora **Artache Delgado** presentó una *Moción de reconsideración*.[22] En resumidas cuentas, reconoció que el señor **Salcedo San Inocencio** está protegido bajo la Ley de Quiebras Federal. No obstante, arguyó que dicha protección es a los efectos de la deuda de pensión alimentaria acumulada hasta la petición de quiebra y no para los pagos con posterioridad a dicha petición. Reiteró que el **Recurrido** tenía la obligación de proveer mensualmente una caja de *PediaSure* con fibra. Añadió que, conforme a la Ley de Quiebras Federal, las obligaciones alimentarias a favor de los hijos se consideran deudas no descargables. De manera que, la declaración de quiebra no libera al deudor de su responsabilidad de cumplir con dicha obligación.

El **21 de agosto de 2025**, el TPI declaró No Ha Lugar la *Moción de reconsideración*.[23]

Inconforme aun, la señora **Artache Delgado** acude ante este foro intermedio y nos plantea la comisión del siguiente error:

> Determinar que la paralización automática bajo el Código de Quiebras federal impide la continuación de los procedimientos relacionados con la pensión alimentaria y no reconocer que las Obligaciones de Sustento Doméstico están expresamente exceptuadas de la paralización automática y

---

[21] Anejo de la Entrada Núm. 3 del caso TA2025CE00493, intitulado *Ap[é]ndice 1- Orden de 6 de agosto de 2025*.
[22] Véase, Autos Originales, págs. 557-559.
[23] Anejo de la Entrada Núm. 3 del caso TA2025CE00493, intitulado *Ap[é]ndice 2 Orden de No Ha Lugar A Reconsideración del 21 de agosto de 2025*.

de la descarga en quiebra según el Código de Quiebras federal.

Este Tribunal le concedió un plazo de diez (10) días al señor **Salcedo San Inocencio** para mostrar causa por la cual no debíamos expedir el recurso solicitado. Sin embargo, el **Recurrido** no compareció. Ante ello, la **Peticionaria** presentó una _Moción en solicitud de que se expida el recurso solicitado_. Así, este Panel emitió una _Resolución_ en la que dio por perfeccionado el recurso de autos.

**-II-**

**-A-**

El auto de _certiorari_ es un medio procesal de carácter discrecional que, a su vez, permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[24] Así, se entiende por discreción como el poder para decidir en una forma u otra; esto es, para escoger entre uno o varios cursos de acción.[25] Por ello, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que habremos de atender —_vía certiorari_— las resoluciones y órdenes emitidas por los tribunales de instancia:

> [E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. [...].[26]

---

[24] _Mun. de Caguas v. JRO Construction_, 201 DPR 703, 711 (2019); _IG Builders et al. v. BBVAPR_, 185 DPR 307, 337 – 338 (2012).

[25] _García v. Asociación_, 165 DPR 311, 321 (2005).

[26] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1. _Énfasis nuestro._

Bajo el carácter de discrecionalidad, la Regla 40 del Reglamento de este Tribunal de Apelaciones establece los siguientes criterios para mostrar causa o para la expedición del auto de certiorari:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[27]

En consecuencia, el Tribunal Supremo de Puerto Rico ha dispuesto que:

> [d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.[28]

De manera, que si la actuación del foro recurrido no está desprovista de base razonable —ni perjudica los derechos sustanciales de las partes— deberá prevalecer el criterio del juez de instancia a quien le

**-B-**

Es harto conocido que la legislación de quiebras federal constituye campo ocupado en esta materia, la cual se encuentra gobernada por el Código de Quiebras.[29] Al amparo del aludido

---

[27] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62 – 63, 215 DPR __ (2025).

[28] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[29] 11 USC sec. 101 *et seq.*; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490 (2010).

estatuto, el inicio de una petición de quiebra crea un *estate*, que comprende los bienes e intereses propietarios del deudor.[30] A su vez, el inicio de la quiebra provoca el llamado *automatic stay*, que opera como un interdicto al paralizar cualquier acción en contra del deudor y la propiedad del *estate*.[31]

Ahora bien, existen ciertas excepciones a la paralización o protección otorgada al deudor. Una de las excepciones significativas es el pago de pensiones alimentarias. Sobre esto, el Código de Quiebras dispone que:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
> (2) under subsection (a)
> (A) of the commencement or continuation of a civil action or proceeding—
> (i) for the establishment of paternity;
> (ii) for the establishment or modification of an order for domestic support obligations;
> [...]
> (B) of the collection of a domestic support obligation from property that is not property of the estate[.][32]

De otro lado, el Código de Quiebras cataloga ciertas obligaciones como no descargables y prioritarias. Estas categorías de obligaciones, aunque interrelacionadas, no son lo mismo. Sobre este particular, el Panel Apelativo de Quiebras para el Primer Circuito de Apelaciones explicó que:

> Priority gives a claim a better right to estate assets or plan payments [...] than is enjoyed by other unsecured claims. Nondischargeability, on the other hand, confers no priority as to estate assets; it merely causes a debt to survive the discharge, such that its holder can continue to collect it despite the discharge.[33]

Ahora bien, existen obligaciones que son tanto no descargables como prioritarias. Particularmente, bajo el Capítulo 13 de la Ley de Quiebras, el pago de **pensión alimentaria** es una

---

[30] 11 USC sec. 541(a).
[31] 11 USC sec. 362(a).
[32] *Íd.*
[33] *In re Bentley*, 266 B.R. 229, 236 (B.A.P. 1st Cir. 2001).

obligación **prioritaria** y también una obligación **no descargable**.[34] El Tribunal Supremo de Puerto Rico ha expresado que la obligación de los alimentos para los hijos es de carácter no descargable ya que no surge de un contrato, sino en el deber natural y legal del padre de mantener a sus hijos.[35] Claro está, los alimentos están sujetos a modificaciones por parte de los tribunales, dependiendo de las circunstancias de las partes. De manera que, el estado de quiebra de un deudor no le libera de dicha obligación.

### -III-

La señora **Artache Delgado** acude ante nos y plantea que el TPI erró al determinar que la paralización automática ("automatic stay") bajo el Código de Quiebras impedía la continuación de los procedimientos sobre pensión alimentaria adeudada a dicha paralización y no reconocer que la obligación alimentaria está exceptuada de la mencionada paralización automática. Tras examinar la legislación federal aplicable y el expediente ante nuestra consideración, determinamos que le asiste la razón, y en efecto, se cometió el error señalado.

Según surge del expediente, el **10 de diciembre de 2024**, la Corte de Quiebra para el Distrito de Puerto Rico emitió una *Orden de Confirmación del Plan de Quiebras* para el señor **Salcedo San Inocencio**.[36] Por lo que, a partir del mes de **enero de 2025**, el **Recurrido** debió continuar mensualmente con el pago de pensión alimentaria y la entrega de la caja de *PediaSure* con fibra. Recordemos que dicha obligación es una no descargable y prioritaria bajo el Capítulo 13 del Código de Quiebras. De manera que, el padre

---

[34] *In re Galindo*, 74 Bankr.Ct.Dec.232 (2025); citando *In re Bentley*, *supra*. Véase, 11 USC sec. 507(a)(7), sec. 523(a)(5) y sec. 1328(a)(2).

[35] *González Hernández v. Borgos Taboas*, 95 DPR 456, 462 (1967).

[36] Ello concerniente **solo** a la cuantía de la deuda incluida en la petición de quiebras que fuese confirmada por el síndico del Tribunal de Quiebras de los Estados Unidos para el Distrito de Puerto Rico. Conforme a la referida petición dicha cantidad asciende a: $4,4800.00. Véase, Anejo de la Entrada Núm. 3 del caso TA2025CE00493, intitulado *Moci[ó]n de la parte apelante el 3 de julio de 2025*.

alimentante **no** quedó liberado del cumplimiento de dicha obligación mensual al acogerse a la quiebra, así como tampoco de lo adeudado e incluido en su petición de quiebra dado que **debe** cumplir con el plan de pago mensual dispuesto por el Tribunal de Quiebras.

En vista de que **posterior** a la *Orden de Confirmación del Plan de Quiebras* se ha alegado que el señor **Salcedo San Inocencio** ha incumplido con el pago de pensión alimentaria y la entrega mensual de la caja de *PediaSure*, entendemos prudente devolver el caso al TPI para que celebre una vista evidenciaria sobre desacato, a la mayor brevedad posible. Si la pensión alimentaria es sufragada mediante la ASUME, se deberá requerir a la señora **Artache Delgado** suministrar un *Cuadre de Caso*.

Advertimos que el incumplimiento de la obligación alimentaria ***post petición de quiebra*** puede conllevar la desestimación de la petición de quiebra del señor **Salcedo San Inocencio**, perder la protección del Tribunal de Quiebras y estar sujeto a un desacato ante el TPI. Por lo cual, de constatar algún incumplimiento con la obligación alimentaria *post petición de quiebra*, se deberá notificar copia de la *Resolución* a la Corte de Quiebra del Distrito Federal de Puerto Rico para que tome conocimiento de este asunto.

### -IV-

Por los fundamentos que anteceden, **expedimos** el auto de *certiorari* solicitado y, en consecuencia, **revocamos** la *Orden* recurrida. Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[37]

---

[37] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." Véase la Regla 35 (A) (1) del Reglamento del Tribunal de

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 58, 215 DPR ____ (2025).